403 So.2d 1217 (1981)
STATE of Louisiana
v.
Curtis O. CROSBY.
NO. 81-K-0406.
Supreme Court of Louisiana.
September 8, 1981.
*1218 Keith D. Jones, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Wiley Dial, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-respondent.
LOTTINGER, Justice Ad Hoc.[*]
The defendant, Curtis O. Crosby, was charged by bill of information with the crime of possession of marijuana in violation of La.R.S. 40:967(C). On the date set for trial the trial court heard and denied defendant's motion to suppress evidence, ordered that the evidence be admitted, denied defendant's motion for directed verdict of acquittal and found the accused guilty as charged. We granted this writ of certiorari to review the trial court's finding that a warrantless search was justified as a valid inventory search of a vehicle. Additionally, the defendant raises the issue of the qualifications of a witness as an expert.

FACTS
On May 9, 1980, at approximately 4:30 p. m. Officer Dan Larkin, the arresting officer, pulled over the defendant for failure to come to a complete stop at an intersection in the Parish of East Baton Rouge. Officer Larkin ordered a driver's license and warrant check on the defendant. The warrant check revealed that there were outstanding arrest warrants for two counts of contempt of court. The defendant was thereupon placed under arrest, informed of his Miranda[1] rights, and handcuffed and placed in the rear seat of the police unit. Officer Larkin then proceeded to call a wrecker service to store the vehicle. The officer asked the defendant if there was a family member in the vicinity who could come to pick up his car. There was none. The officer did not recall whether he asked the defendant if there were any valuables in the car nor whether the defendant consented to an inventory search of the car. As he proceeded to conduct an inventory search, he noticed a green leafy substance which appeared to be marijuana around a partially covered orange frisbee on the floor in front of the driver's seat. Closer examination revealed a "baggie" of this green substance underneath the frisbee and the floor mat.

MOTION TO SUPPRESS
Defendant argues that the trial court erred in disallowing his motion to suppress and subsequently admitting into evidence the seized marijuana. The gravamen of defendant's argument is that there was no need to impound the automobile, thus necessitating an inventory search. It is the defendant's position that he could have driven his automobile to the police station or parked the automobile in the parking area of the L.S.U. Golf Course.[2] The defendant *1219 also argues that he could have been given a misdemeanor summons rather than having been arrested. Finally, the defendant argues that he should have been asked to consent to an inventory search or to consent to waive the protection afforded by such a search.
Without question a warrantless search and seizure occurred in this case. Thus, the burden of proof is upon the state to show affirmatively that this search and seizure were justified under one of the well recognized exceptions to the warrant requirements of the Fourth Amendment and the state constitution. State v. Hatfield, 364 So.2d 578 (La.1978).
Since the state claims that the evidence was seized pursuant to a valid inventory search, it bears the burden of showing that impoundment of the defendant's vehicle was necessary, and that inventory of the vehicle's contents was necessary and reasonable in its scope. State v. Jewell, 338 So.2d 633 (La.1976).
As we stated in State v. Jergnigan, 390 So.2d 1306 (La.1980):
"Some of the factors which this Court has considered significant in determining if the state has carried its burden are whether: the vehicle could have remained safely at or near the place it was stopped; the search was conducted in the field; formal impoundment procedures were followed; the tow truck was called before commencing the search; the vehicle operator was asked if he consented to a search, if the car contained valuables, of if he would consent to the agency's failure to afford him the protection of an inventory search; arrangements could have been made for someone designated by the operator to take possession or protective custody of the vehicle for him."
In denying the motion to suppress the trial judge relied on State v. Jergnigan, supra. We find Jergnigan persuasive though not controlling.
In Jergnigan defendant was stopped around midnight after a high speed chase. Because he had an out of state driver's license he was told to follow the state trooper to the local sheriff's office to post bond. In route the trooper noticed the defendant's car weaving in the road. The trooper pulled the defendant over for a second time, arrested him for DWI, and placed him in the back seat of the patrol car. The officer did not entrust the vehicle to the defendant's two passengers because they had also been drinking and did not have valid drivers' licenses. Arrangements were made to tow the car in and a search proceeded, turning up a quantity of marijuana. The defendant's consent was not obtained prior to the search, nor was he asked if he would waive the inventory search. We held the search valid. Justice Dennis in a dissent stated:
"First, the vehicle was stopped on the side of a highway inside the city limits of Gonzales in front of the Colonial Drive Inn; one of the defendant's companions offered to stay with the vehicle while he was booked at the station in the same town. The record is devoid of any convincing evidence that the vehicle could not have been left locked and under the watch of the companion at or near the place it was stopped. Second, the defendant was not asked for his consent to the search; he was not asked to consent to waive the protection of an inventory search; the officer was unable to produce the inventory record at the motion to suppress hearing; and the search was conducted in the field rather than the place of impoundment. Moreover, the record is not clear whether the tow truck was called before or after the search began. In my opinion, the totality of the evidence fails to show that either the impoundment of the vehicle or the inventory search were necessary to the arrest of the defendant for DWI and speeding in this case." (390 So.2d 1309)
The facts in Jergnigan are stronger in favor of the state than they are in the instant case. In Jergnigan the arrest was at midnight, and the companion who offered to stay with the vehicle had been drinking and thus certainly could not guarantee *1220 that he was capable of staying awake in order to afford some protection to the vehicle.
In the instant case, the defendant's vehicle was stopped in broad daylight a short distance from the parking area of the L.S.U. Golf Course. The vehicle could have been very easily moved to this parking lot rather than having been left on the shoulder of the roadway.
It is the policy of the Baton Rouge Police Department that only family members can take possession of an arrestee's vehicle. The defendant was asked if a family member could pick up his car, and it is unclear from the record how far away a family member was. We are of the opinion that a departmental policy that allows only family members to take possession of an arrestee's vehicle is overly restrictive. In a university community, particularly where an arrest is made near the university, such a policy is certainly suspect in that it imposes a burden on out of town students who have no family members available. Thus the suspicion is raised that the policy is intended only as subterfuge for a warrantless search without probable cause.
Considering that the vehicle could have been safely parked a short distance from the arrest, that departmental policy concerning family members is overly restrictive, that defendant was not asked if he consented to a search or whether he would waive an inventory search, we find the trial court in error in denying the motion to suppress.
Because of our disposition of this matter on the motion to suppress, there is no need for us to discuss the assignment of error as to the expert witness.
Accordingly the defendant's conviction and sentence are set aside, and the case is remanded for a new trial in accordance with law.
REVERSED AND REMANDED FOR A NEW TRIAL.
LEMMON, J., dissents and assigns reasons.
PONDER, J. ad hoc, dissents for reasons assigned by LEMMON, J.
LEMMON, Justice, dissenting.
Defendant had clearly been placed under lawful arrest before the search occurred. A lawful arrest creates a situation which justifies a warrantless search of the arrested person and of the area within his immediate control, so that the police may secure any weapons or prevent the concealment or destruction of evidence. U. S. v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Moreover, when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may search the passenger compartment of that automobile incident to the arrest. New York v. Belton, ___ U.S. ___, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The Court in Belton reasoned that the arrest itself justifies the infringement of any privacy interest that the arrested person may have in the passenger area of the vehicle.
In the present case the policeman arrested defendant on an outstanding bench warrant. Under the Belton decision that arrest alone justified the search of the passenger compartment of the automobile recently occupied by defendant. As a lawfully arrested person he had no justifiable privacy interest in the passenger compartment, in which he could have hastily hidden weapons or contraband.
I would affirm the conviction.
NOTES
[*] Judges Ellis, Lottinger, and Ponder of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Dennis, Watson, and Lemmon.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The parking area of the L.S.U. Golf Course was approximately 300 yards away from the point where the arrest was made.