LUCIEN C. BERTRAND, Jr., Judge Pro Tern.
Defendant has appealed from the denial of his motion to suppress evidence on the ground that it was obtained in violation of his constitutional right against unreasonable search.
Defendant, Joseph Dorociak, on May 7, 1984, was charged by bill of information with possession of a controlled dangerous substance, secobarbital classified in schedule III, in violation of La.R.S. 40:968A. On October 12, 1984, after a hearing the trial court denied the defendant’s motion to suppress evidence. On October 22, 1984, the defendant withdrew his plea of not guilty and entered a plea of guilty but reserved his right to appeal the denial of his motion to suppress. The defendant was sentenced to serve five (5) years with the Department of Corrections. On June 7, 1985, the defendant was granted an order for an out-of-time appeal.
On April 8,1984 at 4:00 a.m. Officer John LaRocca of the Lake Charles Police Department approached the intersection of Sunset and Louisiana Avenue and observed that a car had hit a culvert and was partial *175 ly on and off the roadway. He noticed a white male sitting next to the vehicle. The officer stopped and began an investigation of the accident, obtaining a driver’s license and other information from the defendant. Officer LaRocca then determined that the car was inoperable and would have to be towed. He then began an inventory search of the car by shining his flashlight through the windows. On the driver’s side of the vehicle he noticed cellophane packages containing white pills. He then called the police department to request a detective. He also called for a wrecker before the detective arrived. Officer LaRocca testified that it was normal procedure to conduct an inventory search from the outside of a car that was to be towed.
Officer Chester Kowalski received the call from Officer LaRocca and proceeded to the scene of the accident. When he approached the car he noticed the driver’s door was “popped open” and could not be closed. At Officer LaRocca’s direction Officer Kowalski looked on the floorboard of the car where he saw the white tablets wrapped in cellophane. The officer suspected that the tablets were “Mandrax” and placed the defendant under arrest.
While Officer LaRocca transported the defendant to the station, Officer Kowalski waited for the wrecker to pick up the car. He then followed the wrecker back to the station. Upon his arrival at the police station Officer Kowalski assigned another officer to watch the vehicle while he obtained a search warrant. Officer Kowalski entered the station and asked the defendant if he would sign a voluntary search and seizure form. After the defendant voluntarily signed the form Officer Kowalski and another officer searched the car and found more pills.
In this assignment of error defendant alleges that the trial court erred in failing to suppress evidence discovered after an illegal search of the automobile driven but not owned by the defendant. In his motion to suppress defendant alleged that the search was without probable cause and not pursuant to or related in any way to a legal arrest of defendant. Furthermore, defendant claims the search was not necessary to protect the safety of the arresting officer.

State’s claim of inventory search.

The burden of proof is upon the state to show affirmatively that a warrant-less search is justified under one of the well-recognized exceptions of the warrant requirements of the federal and state constitutions. Since the state claims that the evidence was seized pursuant to a valid inventory search it bears the burden of showing that “impoundment of the defendant’s vehicle was necessary and that the inventory of the vehicle’s contents was necessary and reasonable in its scope.” State v. Sims, 426 So.2d 148 at 153 (La.1983); State v. Crosby, 403 So.2d 1217 (La.1981); State v. Jewell, 338 So.2d 633 (La.1976). Some of the factors considered significant in determining if the state has carried its burden are whether: the vehicle could have remained safely at or near the place it was stopped; the search was conducted in the field; formal impoundment procedures were followed; the tow truck was called before commencing the search; the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency’s failure to afford him the protection of an inventory search; arrangements could have been made for someone designated by the operator to take possession or protective custody of the vehicle for him. State v. Jernigan, 390 So.2d 1306 (La.1980).
The Louisiana Supreme Court has ruled that before an inventory search can be valid there must be a showing that the impoundment of the vehicle was necessary. State v. Jewell, supra. The inventory search is a narrow exception to the requirement of a search warrant and the requirement of probable cause. Due to the possibility of its misuse the Supreme Court has held that to be valid, an inventory search must be strictly limited to the practical purposes which justify it, those purposes being protection of the occupant from the loss of property and the protection of law *176 enforcement agencies against the occupant’s claim for failure to guard against such loss. State v. Rome, 354 So.2d 504 (La.1978); Statd v. Gaut, 357 So.2d 513 (La.1978); State v. Killcrease, 379 So.2d 737 (La.1980); State v. Hardy, 384 So.2d 432 (La.1980); State v. Osbon, 426 So.2d 323 (La.App. 2d Cir.1983).
In the present case, although the defendant’s car needed to be towed because the front end was damaged and part of the car was on the road, the other indicia of a true inventory search are lacking. The alleged search was conducted in the field, not in' the police station. The tow truck was not called before the search commenced. - Formal impoundment practices were not followed, for at the time the officer looked in the window the car was not going to be impounded but merely towed. There is no indication that Officer LaRocca asked the defendant if he could search the car, if there were any valuables in the car or if he would consent to “the agency’s failure to afford him the protection of an inventory search”. The officer did not give the defendant the opportunity to make his own arrangements for towing the car. At the motion to suppress Officer LaRocca testified that he did not ask the defendant if he wished to call a tow truck of his own choice because a city ordinance provides that only wrecker services on a special list could be summoned to remove vehicles blocking the right of way. The Lake Charles City ordinance to which the officer referred reads as follows: “If upon arrival at the scene the owner desires the service of another wrecker company, the wrecker called shall remove the wrecked vehicle from the street right-of-way to a non-hazardous area and leave it for the dollar charge for such service: If the owner desires the service of another wrecker, the wrecker originally called shall not lose his turn on the rotation list referred to in subsection 22-106(b) of this article. It shall be the owner’s responsibility to have the wrecked vehicle removed in a period of time not to exceed two (2)hours from the time of placement and failure to do so will cause the city police department to have it removed at the owner’s expense.” The officer therefore could have given the defendant the option to call a wrecker of his choice.
The officer testified that it was normal procedure to search a car from the outside before towing for the protection of the owner. The purpose of a valid inventory search should be to protect law enforcement agencies against claims by the occupant for losses. State v. Osbon, supra. The cursory search by Officer LaRocca would not have accomplished the above purpose. By merely inspecting the car from the outside, the officer would not be protecting the occupant from loss of valuables in the glove compartment or trunk. The officer’s action cannot be considered a valid inventory search.
The argument can be made that Officer LaRocca’s shining a flashlight into the car and seeing drugs could be justified under the “plain view” doctrine. For this doctrine to apply the following conditions must be met: (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Banks, 363 So.2d 491 (La.1978); State v. Parker, 355 So.2d 900 (La.1978); State v. Meichel, 290 So.2d 878 (La.1974).
In discussing the first requirement of the plain view doctrine the Louisiana Supreme Court stated, “When an officer inadvertently observes evidence of a crime from a vantage point that does not intrude upon a protected area or when that protected area is entered with prior justification, there is no violation of the search warrant rule because there has been no ‘search’. State v. Bourg, 332 So.2d 235 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975).” State v. Parker, supra. The fundamental question is whether there is an intrusion into an area in which there is a reasonable expectation of privacy.
*177 The U.S. Supreme Court does not regard an officer’s viewing evidence through a window with the use of artificial illumination as a search or an intrusion into a protected area. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).
Louisiana jurisprudence, however, is not consistent on that issue. In State v. Parker, supra, an officer’s shining a flashlight through a passenger window, of a van which the officers had never seen in their rounds was not found to be an intrusion into a protected area. The Court’s response to the search issue was: “There can be no doubt that [the officer] did not intrude upon the defendant’s protected area by standing in the street alongside the van. We pretermit deciding and assume for the purposes of argument, that the evidence was inadvertently observed, and that it was clearly contraband. For the purposes of this decision, we may say that the officers did not conduct an. unconstitutional search.” p. 904. The Court predicated the assumption of non-search on inadvertence which left unanswered the question of whether an officer can intend to search and still fall within a plain view category. La-monica, Pretrial Criminal Procedure, Search & Seizure, 39 La.L.Rev. 917, 920 (1979).
In State v. Schmidt, 359 So.2d 133 (La.1978), after a compact automobile had been stopped for traffic violations the police officer’s flashlight check into the vehicle as he stood outside was found to be an intrusion into a protected area because no factual need for such action was shown.
The Court stated:
“Under the facts of the instant case, we do not find that the police officer had a legitimate reason to flash his light into the automobile. The facts indicate that the compact automobile had been stopped for traffic violations. The car was located on the grounds of a state hospital and was surrounded by a number of police officers. The driver and two passengers had been removed from the vehicle. Clearly, the subsequent flashlight check (intrusion) by Deputy Baden into the vehicle (protected area) was not done to determine if some person who might have harmed him was concealed in the automobile. Rather, we find that the flashlight check was done either as a prelude to or as part of the inventory search of the car. Hence, the validity of the seizure depends upon the justification for the initial intrusion, i.e., the inventory search exception to the warrant requirement.” 359 So.2d at 135.
For other reasons, the subsequent inventory search was found to be invalid.
In State v. Brand, 357 So.2d 545 (La.1978), after a lawful traffic stop, an officer, without the use of artificial illumination observed loose marijuana on the driver’s lap. The Supreme Court held that such an observation came under the plain view doctrine. The Court apparently found it significant that there was no enhancement of the opportunity for observation of the contraband in Brand as there was in Schmidt. The privacy expectations of the defendant differed in each case.
In State v. Ford, 407 So.2d 688 (La.1981) and in State v. McGary, 397 So.2d 1305 (La.1981) an officer’s shining a flashlight into a car was perceived as an intrusion but justified for the protection of the officers. In State v. Banks, 363 So.2d 491 (La.1978) an officer stopped a defendant for a traffic violation. After defendant’s full custodial arrest the officers approached the car to transport the vehicle to the police station for safe keeping. Without entering the car the officers noticed a pistol on the front seat and a marijuana cigarette on the floorboard. The officer’s action in approaching the vehicle to take it into custody and then looking inside was found to be unjustified by the Supreme Court.
In the instant case no valid factual need was shown for Officer LaRocca to shine his flashlight into defendant’s vehicle. Even though Officer LaRocca’s observation of the drugs on the floor board of the car was inadvertent his approach to the vehicle and subsequent flashlight check evidenced an intention on his part to survey the contents of defendant’s car. There ex *178 isted no prior valid justification for him to do so and with the use of a flashlight to aid his observation it cannot be said he viewed the contraband in a way that caused no intrusion upon a protected area.
We find that the State has failed to meet the first requisite of the plain view doctrine and therefore the doctrine cannot apply to the evidence observed in the instant case.
Accordingly, we conclude that the search in the instant case violated defendant’s rights under the Fourth Amendment and those afforded by Article 1 § 5 of the Louisiana Constitution of 1974.
The evidence in question was not seized at the time of the illegal search but after the obtaining of a signed consent to search from the defendant.
Valid consent searches constitute one well-recognized exception to the requirement of a valid search warrant, and also to the requirement of probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Angel, 356 So.2d 986 (La.1978); State v. Mitchell, 360 So.2d 189 (La.1978).
A voluntary consent to search given after an illegal search or detention is valid if it is given under circumstances which show no exploitation of the illegality. State v. Zielman, 384 So.2d 359 (La.1980); State v. Mitchell, supra.
Officer Kowalski gave the following account of the facts surrounding defendant’s consent to search the vehicle.
Upon his arrival at the police station, Officer Kowalski assigned another officer to watch the vehicle while he obtained a search warrant. At that time the officer entered the police station and readvised defendant of his rights. Defendant advised the officer he knew he was in trouble and wanted to speak to someone in the narcotics division, to give them information. Before an officer from the narcotics division arrived, Officer Kowalski asked defendant if he would give his consent to a search of the vehicle. The officer read and explained the voluntary search and seizure form to defendant who then signed it. This account was verified by Corporal Melvin Cook who was present at this time and later assisted Officer Kowalski in the search of the vehicle. Both officers denied any use of threats, promises, or intimidation in defendant’s consenting to the search. Defendant did not offer evidence to rebut this account.
We are of the opinion that the consent to search given by the defendant in the present case was the product of his own free will and not a result of an exploitation of the illegal inventory search and subsequent arrest.
DECREE
For the above and foregoing reasons, the judgment of the Trial Court denying defendant’s motion to suppress is affirmed.
AFFIRMED.